The next case on the calendar is Greenberg v. State University Hospital. May it please the court. Good morning. My name is Chad Edgar for the Plaintiff Appellant, Dr. Odette Greenberg. With the uninterrupted time allotted to me, I'd like to turn to two fairly big issues. The District Court's granting of summary judgment to appellees with respect to the interference claim and then the retaliation claim. Please go ahead. First, by holding that Dr. Greenberg's interference claim was actually a retaliation claim in disguise, the District Court appeared to reason that an interference claim and a retaliation claim cannot rest on the same set of facts. This court appears to assume otherwise as it accepted the plaintiff's prosecution of both an interference and retaliation claim under the FMLA based on the same set of facts in Graciado v. Culinary Institute. Second, the District Court held in the alternative that Dr. Greenberg could not show that he suffered a loss of benefit with respect to the two-day leave that he took because he was paid pursuant to compensable sick leave. As an initial matter, we would stress the super obvious point that the appellee's denial of Dr. Greenberg's request for leave that was arguably covered by FMLA is sufficient to satisfy the element that he was denied a benefit under the FMLA. Additionally, District Courts in the circuit and elsewhere have viewed an employer's refusal to reinstate an employee out on FMLA leave upon their return to the same or similar position as an interference claim. We cite cases for this proposition in the brief. Here it's undisputed that upon Dr. Greenberg's return from FMLA leave that he took over the warning of his supervisor that doing so was at the risk of losing his job. He was placed on probation that stripped him of job protections that he enjoyed before taking the FMLA leave. Once again, to state the obvious, one of the key benefits of FMLA is the guarantee that an employee out on a covered leave will be guaranteed a return to employment with the same or substantially same terms and conditions that he enjoyed before the FMLA leave. To deny such is to interfere with an employee's FMLA rights. And on a related note, if there were questions as to whether Dr. Greenberg's return to work involved a material change to the terms and conditions of his position or whether he was really coerced into signing the settlement agreement, which you may remember was a condition to actually reporting back to the workplace, which triggered the material change that was just addressed, then those questions should be resolved by a jury and not decided as a matter of law by a judge. And moving to the retaliation claim, with respect to that, the district court and appellees make much of the fact that Dr. Greenberg's conduct with respect to the attestations make the decision to terminate him impervious to challenge. The discussions of both the district court and appellees regarding the FMLA retaliation claim, there's no mention of this court's recent holding and Woods versus Starr treatment of the more lenient causality standard that applied to those who seek to prove a certain kind of FMLA retaliation claim. The causality standard is negative factor, and it applies to one of Dr. Greenberg's theories of retaliation, that he was terminated for having taken a leave, which is to be distinguished from another retaliation theory, that he was terminated for opposing a practice of appellees that was unlawful under the FMLA. As this court has made clear in Woods, all that a plaintiff needs show with a retaliation claim of the kind alleged with Dr. Greenberg is that the decision makers involved in the adverse employment action considered that FMLA leave as a negative factor in their termination decision. Can I ask a question about the interference claim, drawing your attention back to that? Assume for the moment that we agree with you that there is a difference between the interference claim and the retaliation claim. Why is there an issue here that suggests he was actually denied a benefit to which he was entitled? Because he did take sick leave on September 4th and 5th, and he ended up being paid for both days. What precisely was he deprived of? One of the benefits of the FMLA is that it's not just the process of an interference is not only asking and being denied, but also it is on your return to the workplace, were you placed back under the same conditions when you left? As you may remember, Dr. Greenberg came back. True, he was paid through sick leave, but nonetheless, in order to report back to work, he had to go to labor relations. Our argument is that he didn't really have a choice to sign a settlement agreement that stripped him of job protection. He initially thought he was going to take the FMLA leave for his son, but that's not what he ended up doing, right? One of the elements for an interference claim is that he was denied benefits to which he was entitled under the FMLA. Throwing your back out is not an entitlement to benefits under the FMLA, right? There is still an interference claim at the moment that he is denied the leave that was initially predicated on the need to attend to his special needs son, correct? I'm not sure that's correct. Your view is that his request, if it's not immediately acceded to, that's the interference, even though he ends up not needing it at the end of the day. It is that act of denial, which the FMLA says you're not allowed to do. It's a violation of FMLA rights if you have an eligible FMLA leave that you are requesting. Obviously, there are all sorts of factual disputes as to whether he put defendant appellees on notice as to whether it was eligible. The last element under Graziato is that he was denied benefits to which he was entitled under the FMLA. You seem to be saying that that benefit is the right to know on the spot that your leave has been granted. I don't think there's any case law to support that, is there? When your supervisor tells you three times in the course of 24 hours that your request for FMLA leave is denied, then I don't think you are really operating under a belief that there's an ongoing conversation going on. If he had been denied it and then took it anyway and was docked pay, then he would have been denied a benefit that he was entitled to under the FMLA. But he ended up not taking the days for that stated reason. He took them for another reason. Your view is that he would be entitled to be paid under the FMLA even though the reason changed? Okay, so the appellees characterized what he stated upon his return, which was stated – and we tried to develop this in the brief – he stated under duress. Later on in the deposition – and this is where we had the analog to Jeffrey's, which we took great umbrage to – but nonetheless, at this deposition, he made clear that he always intended to take that leave. It's just under duress and under fear of losing a job, being the sole provider. He began to recharacterize in the hope of softening up the naked insubordination, and he later clarified that he always intended to provide love and care to his special needs son and that he was still able to with his injured back. But I think it's an issue that is factually intensive and warrants a jury resolving it. Thank you, Mr. Edgar. We'll hear from the appellees. And you reserve two minutes of rebuttal time. Correct. Good morning, Your Honors. May it please the Court. My name is Amit Bora, and I represent the State Defendants at SUNY Downstate Medical Center and Doctors Reed and Blitzer. This Court should report the grant of summary judgment to the State Defendants on the FMLA claim and the Title VII claim. I will also begin with the FMLA interference claim. Now, this claim failed because Dr. Greenberg never reasonably conveyed to SUNY that the FMLA was at play. She says that he told Dr. Blitzer that he needed leave to take care of his special needs son. But mentioning to Dr. Blitzer that he needed time off due to some logistical issue involving his special needs son's schooling isn't necessarily equivalent to putting Dr. Blitzer on notice that he needed time off for an FMLA-qualifying reason. Moreover, he then emailed SUNY, letting them know that he did not need to miss work for his son because the situation had been resolved, but that he would still need to miss work to nurse his injured back. And then at the labor relations meeting, he repeatedly insisted that his back injury, not any issue involving his son's schooling, was a reason for his absence. At 104, the record, he says it really happened that way. At 105, he says that's what happened. At 106, he says that's exactly the way it happened. Finally, he submitted and signed timesheets making his absence a sick date. So from SUNY's perspective, there's an oblique reference to a logistical issue involving his son's transition to a new school, followed by an email affirmatively withdrawing that excuse and putting forward an excuse that's categorically not FMLA-qualifying, followed by a repeated insistence that his non-FMLA-qualifying reason was genuine. Given those undisputed facts, no reasonable juror could conclude that Dr. Greenberg reasonably conveyed to SUNY that he needed to miss work for an FMLA-qualifying reason. No, I jumped in early. Keep going. Sorry. Well, just to make a couple more quick points before your Honor's questions, it's also important to remember that FMLA needs can be retroactively given. So at any point, he could have clarified and said, actually, I missed those two days for an unforeseeable and serious health condition involving my son. And SUNY could have convinced the information-gathering process and eventually marked his absence as an FMLA date, but he never did that. Instead, to borrow the Seventh Circuit's turn of phrase in Collins, he threw his employer off the fence, and he allowed the employer to persist in the belief that he did not want to draw down on his FMLA leave. And as your Honor's noted, he suffered no prejudice. He was never denied any benefit to which he was entitled under the FMLA. Prejudice is a requirement for an interference claim. His court's decision in Sarno makes that clear. The Supreme Court's decision in Raddville also makes that clear. He received the ex-ante protection of the FMLA in that he was able to stay home with his son. And the retaliation claims, the analysis is similar. SUNY can't be deemed to have punished him for exercising his FMLA rights when, from SUNY's perspective and given everything he's told them, he was not attempting to exercise his FMLA rights. Now, another way to conceptualize this issue… If, upon hearing opposing counsel's argument, I was uncertain after reading the briefs, but upon reading the arguments and understanding what the FMLA interference claim really is, now I think that this court actually had it right. Because if opposing counsel's claim is simply that he intended to take FMLA leave and was punished for taking that leave in terms of having to sign this probation agreement, then I think that claim is equivalent to a retaliation claim. The theory on both is that SUNY put him on probation because he exercised his FMLA rights. You'd have a much more difficult case if he had actually been deprived of two days of pay, wouldn't you? I mean, his testimony is that he asked for what, you know, liberally construed seems like family leave. I need to take off time to care for my special needs son. Two separate occasions with Dr. Pulitzer. And if we credit that testimony and he had actually suffered a docking of pay for two days, that would seem to be at least a primifacient interference claim, wouldn't it? No, Your Honor, I think because of what he because of the email he sent and the testimony that he gave at the labor interrogation meeting. I mean, at that point, SUNY could not have known that he wanted to draw down on his FMLA leave as opposed to a sick leave. He kept saying he did not want to draw down on his FMLA leave. So I think you're right, Your Honor, that it would be a closer case. But I still don't think he'd be able to make an FMLA claim on those facts. And there are powerful reasons why the notice requirement should not be deemed to be satisfied when an employee withdraws an FMLA qualifying reason affirmatively and replaces it with a reason that's unrelated to the FMLA. Because the point of the requirement is to ease the employer's burden. The employer's obligation is to gather information and confirm that the request is FMLA qualifying. And that obligation is triggered only for a small subset of requests. Requests for non-period conditions, though, don't trigger FMLA duties because otherwise the employer would be overwhelmed. And for the same reason, if an employee affirmatively substitutes an FMLA qualifying reason for a reason that has nothing to do with the FMLA, an employer shouldn't be obligated to look into the matter. Inviting the employee to a first reason can also be harmful to the employee. An employee might not want his or her leave to be categorized as FMLA leave. FMLA leave is unpaid. FMLA leave is limited. Now, another way to conceptualize this issue is to consider how this case would look if he hadn't sent the email and if he hadn't doubled down on his claims at the labor interrogation. If he made clear that he needed to miss work for an unforeseeable and serious health condition involving his son, and soon he warned him that he better come to work anyway, and he never sent an email withdrawing that excuse, and he ended up begrudgingly coming to work and missing time with his son, then he might have had interference claims. And if he made clear that he needed to miss work for an unforeseeable and serious health condition involving his son, and he never sent an email withdrawing that excuse, and he stayed home with his son, and then soon he punished him for missing work, then he might have had a retaliation claim. But that's not what happened here. Here on this summary judgment record, no reasonable juror can conclude that soon he could reasonably know that he was missing work for an FMLA qualifying reason. We'll hear from your co-counsel, from Ms. McCampbell. Yes, Your Honors. Good morning, and may it please the Court. Amy McCampbell on behalf of the city appellees. Your Honors, Dr. Greenberg's claim against the city fails for the additional reason that the city was not Dr. Greenberg's employer. And even if a joint employer relationship is found here, and there's no basis to find such a relationship, the city played no actionable role in the employment decisions that Dr. Greenberg challenges. This Court's precedent makes clear that the factors that are considered in determining whether a joint employer relationship exists include commonality of hiring, supervision, firing, and discipline. And here, none of those factors support a finding that the city was Dr. Greenberg's employer. New York City H&H did not hire Dr. Greenberg. He was hired by SUNY Downstate. New York City H&H had no authority to discipline Dr. Greenberg. He was subject to discipline under the collective bargaining agreement between his union and between SUNY Downstate. New York City H&H did not control Dr. Greenberg's pay, did not pay his benefits, did not maintain his personnel files. New York City H&H had no authority to terminate Dr. Greenberg's position. At most, H&H could have denied his assignment to Kings County Hospital Center. And the cases that we cite in our brief are clear that the mere ability to deny assignment to one site does not create a joint employer relationship. Moreover, even if a joint employer relationship is found, and again, it shouldn't be, the city played no actionable part in the employment decisions that Dr. Greenberg challenges. The settlement agreement that was discussed, New York City H&H was not a party to that agreement, and it played no role in the proceedings that led up to that agreement. New York City H&H also played no role in the decision to terminate Dr. Greenberg. Two different officers from SUNY's Office of Legal Relations testified that they did not consult with anyone from H&H in their investigation and decision to terminate Dr. Greenberg. And finally, Dr. Greenberg has presented no evidence that anyone at New York City H&H bore any discriminatory animus towards him, or that anyone even knew or should have known of the purported animus of Dr. Reed. And for those reasons, all of those reasons, Dr. Greenberg claims against New York City failure. Thank you. We'll hear rebuttal. Mr. Edgar. Yes. Thank you, Your Honor. So just to the, jumping quickly to post-leave September 4th, September 5th statements by Dr. Greenberg, I think it's important to note in the full-length interview with Labor Relations that, yes, while he is talking again about his back injury, he is also laying out in full facts about the son and the issue that clearly put, gave enough facts to SUNY to understand that he was laying out eligibility for FMLA leave. And it's disturbing in the deposition extracts of the Labor Relations representative, Arabian, that when asked point blank if he saw anything in the transcript that would indicate FMLA leave, he says no. And then there is the, I think it's a September 15th, 2014 email that Dr. Greenberg writes to both Dr. Pulitzer and Dr. Reed, in which he is still saying, I can't believe you made, you refused my wanting to go out on leave to help with a family emergency. So he is trying to, perhaps he didn't even know what his FMLA rights were at that point, but he certainly had a sense that these were facts that seem morally to warrant a leave for family leave. And then he comes later to understand that it was probably FMLA eligible. So I think that counsel's representation of what happened in the aftermath of the leave and those accounts need to be rounded out a little bit. And with respect to the city's notion that the city has no joint liability and or had no role in the adverse actions with respect to Dr. Greenberg, I would submit that Dr. Pulitzer was in fact a de facto employee of NYHHC. He was chief of service of Kings County. He reported to the CMO of Kings County. He's walking and talking like a city employee. And so at least at that very level, there's a factual dispute as to whether the city should be held jointly liable that should have been left for the jury. Can I just ask you very briefly about that last point? I mean, Dr. Greenberg is a member of a union that has a collective bargaining agreement with SUNY, not HHC. And Dr. Pulitzer is a SUNY employee. So what do you mean by saying that we should look at Dr. Pulitzer as a de facto HHC supervisor? Because he actually has an official title at Kings County, correct? So he has the title of Chief of Service, Radiology Department, Kings County Hospital. And he's reporting about daily operations. I assume nearly every day to the CMO of Kings County in a way that the other radiologists are not. And, you know, we rely very heavily on Foresight, which has very, very similar factual circumstances in which you have a security card placement agency placing security guards in New York City parking lots. And there is a union agreement that only in yours to the placement agency. But yet the agreement between New York City and the security guard placement agency, reserving that right that the city had to send one of the place folks away from a particular site operated as a kind of de facto determination. Right. And so, you know, we think that this lines up quite nicely with Foresight, which the view was that it was at least a factual issue as to whether the city was jointly liable there. And, you know, the same argument obtains here that the city would be jointly liable here. Thank you. That's very helpful. We'll take the matter under advisement. Nicely argued by by all. Thank you very much. Very helpful. Thank you.